UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NORTHERN INNOVATIONS HOLDING CORP., *et al.*, </br></br> Plaintiffs, </br></br> v. </br></br> THE KETO PLAN, LLC, *et al.*, </br></br> Defendants. | Case No. 1:21-cv-02172 </br></br> Judge J. Philip Calabrese </br></br> Magistrate Judge Thomas M. Parker |

## OPINION AND ORDER

On March 14, 2022, Plaintiffs Northern Innovations Holding Corp. and Iovate Health Sciences U.S.A., Inc. moved for default judgment against Defendants The Keto Plan, LLC and Keto Diet, LLC. (ECF No. 12.) In the complaint, Plaintiffs brought claims for trademark infringement and unfair competition under State and federal law. (ECF No. 1.) Plaintiffs seek default judgment, statutory damages, attorney fees and costs and permanent injunctive relief. For the reasons that follow, the Court **GRANTS** Plaintiffs' motion.

### FACTUAL AND PROCEDURAL BACKGROUND

Iovate Health Sciences U.S.A., Inc. is a provider of sports supplements in the United States and Canada. (ECF No. 1, ¶ 13, PageID #3.) Since March 1996, Iovate has sold supplements under the house mark and brand MUSCLETECH. (*Id.*) Iovate offers its products under various trademarks. (*Id.*) Iovate's marks appear on its

products, as well as its marketing materials. (*Id.*, ¶ 14, PageID #3; ECF No. 1-5, PageID #27–35.)

Northern Innovations Holding Corp. and Iovate collectively own the following federally registered trademarks:

| U.S. Reg. No. | Trademark | Goods | Date of First Use Anywhere and in Commerce |
|---|---|---|---|
| 2,855,448 | NITRO-TECH | Food and sports nutrition supplements for strength and performance enhancement | At least as early as February 2000 |
| 5,674,897 | CELL-TECH | Dietary supplements | At least as early as February 2008 |
| 4,522,689 | AMINO BUILD | Dietary supplements containing amino acids | At least as early as October 2012 |
| 5,919,927 | VAPORX5 | Dietary supplements | At least as early as August 2016 |
| 6,408,036 | SHATTER | Dietary supplements | At least as early as August 2018 |

(ECF No. 1-6, PageID #37–45.)

Without Iovate's authorization or consent, The Keto Plan, LLC and Keto Diet, LLC sell products that are strikingly similar to Iovate's products, labeling, and marks. (*See* ECF No. 1-5; ECF No. 1-7; ECF No. 1-8.) Indeed, the only discrepancy appears to be the names of the products.

The Keto Plan and Keto Diet appear to be owned by the same entity, and their websites and products are nearly identical to each other. (*See* ECF No. 1-7; ECF No. 1-8.) On October 26, 2021, Iovate's counsel sent Keto Diet a letter informing Keto Diet that it was selling its products without authorization and in violation of Iovate's rights in its marks. (ECF No. 1-9, PageID #55–59; ECF No. 1-12, PageID #66.) The letter demanded Defendants to cease such conduct immediately. (ECF No. 1-9,

PageID #55–59.) Defendants did not respond to Iovate's letter. (ECF No. 1, ¶ 34, PageID #9.) And Defendants continue to sell the products without Iovate's consent or authorization. (*Id.*, ¶ 33, PageID #9; ECF No. 12-1; ECF No. 12-2.)

On November 15, 2021, Plaintiffs filed a complaint against Defendants. The complaint asserts claims for trademark infringement and counterfeiting under the Lanham Act (Count One); false designation of origin and unfair competition under the Lanham Act (Count Two); deceptive acts and trade practices under the Ohio Deceptive Trade Practices Act (Count Three); and trademark infringement and unfair competition under Ohio common law. (ECF No. 1.) Defendants did not respond to Plaintiffs' complaint. On February 28, 2022, the Clerk noted Defendants' default. (ECF No. 9.) Plaintiffs then moved for a default judgment seeking a permanent injunction prohibiting further acts of infringement by Defendants, statutory damages in the amount of $250,000, and attorney fees and costs. (ECF No. 12.) Defendants did not oppose the motion.

## ANALYSIS

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default and default judgment. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After entry of default under Rule 55(a), the party seeking relief may apply for a default judgment under Rule 55(b).

Once default is entered, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S. Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

### I.  Defendants' Liability

Plaintiffs seek default judgment on their claims for trademark infringement and unfair competition under federal and State law. (ECF No. 12.)  While the well-pleaded factual allegations of the complaint are accepted as true for the purpose of determining liability, the Court must still determine whether those facts are sufficient to state a claim for relief. *Zinganything, LLC v. Import Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016).

#### I.A.  Federal Trademark Infringement and Counterfeiting

The Lanham Act prohibits an individual or entity from using in commerce, without the consent of the registrant, "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods" if "such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(a).  To establish trademark infringement under the Lanham Act, the plaintiff must show that:  (1) it owns a trademark, (2) the infringer used the mark in commerce without authorization, and (3) the use of the alleged infringing trademark "is likely to cause confusion among

4

consumers regarding the origin of the goods offered by the parties." *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013) (citing 15 U.S.C. § 1114). "The 'touchstone of liability' for federal trademark infringement claims brought under [the Lanham Act] 'is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 910 (S.D. Ohio 2014) (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)).

Based on the allegations in the complaint—which are deemed admitted by Defendants' default—the Court concludes that Plaintiffs have established the elements required to state a claim for relief for trademark infringement and counterfeiting under the Lanham Act. Plaintiffs own valid trademarks for NITRO-TECH, CELL-TECH, AMINO BUILD, VAPORX5, and SHATTER. ([ECF No. 1-6](#).) By defaulting, Defendants admitted to using Plaintiffs' marks by producing, advertising, distributing, and selling products in commerce that are nearly identical to Plaintiffs' products and that such unauthorized use of the marks caused and is likely to cause confusion among consumers regarding the origin and quality of the goods offered by Defendants.

Accordingly, Plaintiffs are entitled to default judgment on Count One for trademark infringement and counterfeiting under the Lanham Act.

### I.B. Federal Unfair Competition

Section 43(a) of the Lanham Act prohibits "any false description or representation" in advertising goods in interstate commerce. 15 U.S.C. § 1125(a).

5

The test to determine whether there has been unfair competition is the likelihood of confusion between the two marks. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006). Essentially, this test overlaps with determining whether there has been trademark infringement. "[W]e use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks." *Id.* (citing *Two Pesos v. Taco Cabana*, 505 U.S. 763, 780 (1992)).

Here, Defendants used Plaintiffs' marks in advertising, distributing, and selling products and have done so without Plaintiffs' consent or authorization. Indeed, Defendants' use of Plaintiffs' marks is likely to cause confusion among consumers as to the source and origin of the products. (*See* ECF No. 1, ¶ 21, PageID #6–7; ECF No. 12-1, PageID #127–28; ECF No. 12-2, PageID #130–32.)

Accordingly, Plaintiffs are entitled to default judgment on Count Two for unfair competition under the Lanham Act

### I.C. State-Law Claims

Plaintiffs bring claims for deceptive acts and trade practices in violation of Section 4165.02 of the Ohio Revised Code and trademark infringement and unfair competition in violation of Ohio common law. Ohio law prohibits entities or persons from engaging in conduct that "[c]auses likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," Ohio Rev. Code § 4165.02(A)(2), or that "causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another," *id.*, § 4165.02(A)(3).

The analysis of deceptive trade practices and unfair competition claims under Section 4165.02 of the Ohio Revised Code and Ohio common law is the same as that for an unfair competition claim under the Lanham Act. *See ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003) ("[O]ur discussion of the federal trademark claims will therefore encompass the state trademark claims as well."); *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 626 n.2 (6th Cir. 2002) ("Both Ohio and federal courts have recognized that the same analysis applies to claims under Ohio's statutory and common law of unfair competition and the Lanham Act.").

Accordingly, for the reasons already discussed, the Court concludes that Plaintiffs are entitled to default judgment against Defendants on Counts Three and Four with respect to their claims for deceptive trade acts and practices in violation of Section 4165.02 of the Ohio Revised Code and trademark infringement and unfair competition in violation of Ohio common law.

**II.  Damages**

Where a defendant is in default, the well-pleaded allegations of a complaint as to liability are taken as true, but not as to damages. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S. Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)). "[T]he civil rules 'require that the party moving for a default judgment must present some evidence of its damages.'" *IBEW Local Union 82 v. Union Lighting Prot.*, No. 3:11-CV-208, 2012 WL 554573, at *1 (S.D. Ohio Feb. 21, 2012) (quoting *Mill's Pride, L.P. v. W.D. Miller Enters., LLC*, No. 2:07-cv-990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010)).

The Lanham Act provides for an award of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods . . . sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). Where willfulness is demonstrated, however, a maximum award of $2,000,000 per counterfeit mark per type of good sold may be awarded. *Id.*, § 1117(c)(2). "An intent to infringe can be shown by circumstantial evidence." *Microsoft Corp. v. Compusource Distributors, Inc.*, 115 F. Supp. 2d 800, 812 (E.D. Mich. 2000) (citing *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1121 (6th Cir.1996)).

Plaintiffs seek statutory damages in the amount of $50,000.00 for each of Iovate's marks at issue, for a total of $250,000.00. (ECF No. 12, PageID #119–20.) Plaintiffs assert that this request is a reasonable estimated amount of the revenues Defendants' business generated. (*Id.*, PageID #120.) Also, Plaintiffs assert that an award of $50,000.00 in statutory damages for each counterfeit mark is in line with awards by other courts within the Sixth Circuit. *See Microsoft Corp.*, 115 F. Supp. 2d at 812.

The Court concludes that Defendants' act of counterfeiting Plaintiffs' marks was willful. Indeed, even after Iovate sent Defendants a cease-and-desist letter, Defendants continued infringing on Plaintiffs' marks. (*See* ECF No. 1-9, PageID #55–59; ECF No. 1-12, PageID #66; ECF No. 12-1; ECF No. 12-2.) "A defendant's continued infringement after notice of his wrongdoing is probative evidence of willfulness." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007) (citing *Ford Motor Co.*, 441 F. Supp. 2d at 852). Further, the statutory damages

8

Plaintiffs seek fall on the lower end of the spectrum of potential damages, even without a showing of willfulness.

Accordingly, the Court **GRANTS** Plaintiffs' requested statutory damages of $50,000.00 per counterfeit mark, for a total award of $250,000.00.

### III. Attorneys' Fees and Costs

The Lanham Act, provides for an award of attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 117(a). A case may be considered exceptional when a defendant had notice of the infringement activity but continued to engage in the activity and also failed to litigate the issue of liability. *Coach v. Goodfellow*, 717 F.3d 498, 505–06 (6th Cir. 2013).

Here, Plaintiffs provided evidence that Defendants continued their infringement activity even after receiving a cease-and-desist letter. (*See* ECF No. 1-9, PageID #55–59; ECF No. 1-12, PageID #66; ECF No. 12-1; ECF No. 12-2.) Further, Defendants failed to respond in this case in any meaningful manner. Therefore, the Court finds that this is an exceptional case which warrants an award of attorneys' fees under the Lanham Act. *See Astra Assocs., Inc. v. Sijora Enters., LLC*, No. 15-14148, 2017 WL 744239, at *7 (E.D. Mich. Feb. 27, 2017) (finding trademark infringement case exceptional after granting default judgment where defendant willfully infringed, and defendant continued to use plaintiff's mark without permission).

Next, the Court must determine whether Plaintiff's requested attorneys' fees are reasonable. To determine the reasonableness of fees, a district court "begins by determining 'the fee applicant's lodestar, which is the proven number of hours

9

reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) (quoting *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)). To prove that the purported fees are reasonable, the requesting party must provide "evidence supporting the hours worked and rates claimed." *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1207 (6th Cir. 1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In determining a reasonable rate, a court may consider the awards in analogous cases, *see Johnson v. Connecticut Gen. Life Ins., Co.*, No. 5:07-cv-167, 2008 U.S. Dist. LEXIS 24026, 2008 WL 697639, at *5 (N.D. Ohio 2008), as well as its own knowledge and experience from handling similar requests for fees, *see Ousley v. General Motors Ret. Program for Salaried Emps.*, 496 F. Supp. 2d 845, 850 (S.D. Ohio 2006) (citing *Coulter v. State of Tenn.*, 805 F.2d 146, 149–50 (6th Cir. 1986)).

Plaintiffs request attorneys' fees in the amount of $24,721.25 and costs in the amount of $562.52. To support the lodestar, Plaintiffs provide their counsel's affidavit stating that counsel expended a total of 68.8 billable hours on this matter, at a rate just over $490 per hour, for a total of $30,011.00 in attorney fees. (ECF No. 13, ¶¶ 4–5, PageID #137.) Plaintiffs' counsel acknowledges that their legal fees are likely higher than attorneys practicing in the Northern District of Ohio; and as a result, reduced the requested fees by 25%. (*Id.*, ¶¶ 4–5, PageID #137.) However, in the Court's experience, that billing rate is not unreasonable, particularly in intellectual property matters such as this.

10

Ordinarily, the Court would require the submission of itemized billing records to support requested fees and ensure they fulfill the purpose of a fee award. "A reasonable fee must be 'adequately compensatory to attract competent counsel' but avoid 'producing a windfall for lawyers.'" *Noco Co. v. Ko*, No. 1:19-CV-1547, 2021 WL 3725655, at *2 (N.D. Ohio Aug. 23, 2021) (quoting *Gonter v. Hunt Valve Company, Inc.*, 510 F.3d 610, 616 (6th Cir. 2007)). However, because counsel have reduced the fees they are requested by 25%, the Court has no concern that such a reduction accounts for any time not appropriately billed. Put another way, with that reduction, the Court is satisfied based on its experience and its knowledge of this case that the hours claimed at counsel's hourly rate are reasonable. Therefore, the Court awards attorneys' fees in the amount of $22,508.25.

## IV. Injunctive Relief

Under the Lanham Act the Court may issue an injunction to prevent trademark infringement "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Audi AG v. D'Amato*, 469 F.3d 534, 550–51 (6th Cir. 2006) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Permanent injunction is appropriate if the plaintiff shows (1) it has suffered irreparable injury, (2) there is no adequate remedy at law, (3) the "balance of hardships" favors injunctive relief; and (4) a permanent injunction serves the public interest. *Id.* at 550.

As to the first factor, no particular finding of irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases. *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999) (citing *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991)). Rather, irreparable injury "ordinarily follows when a likelihood of confusion or possible risk to reputation appears" from infringement or unfair competition. *Id.* Here, Plaintiffs suffered irreparable injury because Defendants' conduct is likely to cause confusion. (*See* ECF No. 1-8; ECF No. 12-1; ECF No. 12-2.) As to the second factor, there is no adequate remedy at law where there is potential for future harm from infringement. *Audi*, 469 F.3d at 550. Also, there is potential for future harm from infringement on the facts presented because Defendants continued their infringing conduct even after receiving Plaintiffs' cease-and-desist letter, making it likely that Defendants will continue the infringing conduct in the future.

Regarding the balance of hardships, a permanent injunction is appropriate because Defendants face no hardship in refraining from willful trademark infringement, but Plaintiffs face hardship from Defendants' infringing conduct. Finally, it is in the public's interest to issue a permanent injunction. "[E]njoining [a] [d]efendant's use of [a plaintiff's] trademarks would advance two fundamental purposes of trademark law: preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 883 (S.D. Ohio 2007) (citing *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir.2006)).

After weighing the factors above, the Court concludes that a permanent injunction enjoining Defendant is warranted. Accordingly, the Court **PERMANENTLY ENJOINS** Defendants, and any of their affiliates, successors, or assigns from selling the Plaintiffs' products or any product distributed by Plaintiffs and from using Plaintiffs' trademarks.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for default judgment and **AWARDS** Plaintiffs statutory damages of $50,000.00 for each of their five registered trademarks that Defendants infringed, for a total statutory damages award of $250,000.00 plus post-judgment interest as required by 28 U.S.C. § 1961. Additionally, the Court **GRANTS** Plaintiffs' request for attorneys' fees and costs in the amount of $22,508.25—making the total award $272,508.25, plus post-judgment interest. Finally, the Court **PERMANENTLY ENJOINS** Defendants from selling Plaintiffs' products or any product distributed by Plaintiffs and from using Plaintiffs' trademarks.

**SO ORDERED.**

Dated: April 4, 2022

J. Philip Calabrese
United States District Judge
Northern District of Ohio